[No. 6,587.—Department No. 1.]

## SIGOURNEY v. ZELLERBACH ET AL.

PLEADING—RELIEF.—It is a cardinal rule that the pleading of the party to whom relief is granted must be sufficient to warrant the relief.

ID.—ID.—INTERVENTION—MARSHALING SECURITIES.—ESCROW.—In an action to foreclose a mortgage, a complaint in intervention was filed, setting up a contract between the plaintiff and the defendant Z. (the mortgagor's grantee); whereby the former agreed to execute to the latter an assignment of the note and mortgage in suit, (and of another note and mortgage) and to place the same, with the instruments assigned, in escrow with one P.; Z., thereupon, to give his notes to the plaintiff for specified sums, and the assignment and instruments assigned to remain in the hands of P. as security for the payment of the notes, until Z. should deliver to him, as collateral security for the notes, certain shares of stock, and then to be delivered to Z.; the complaint in intervention further alleging full performance of the contract by Z., and the conveyance of the mortgaged premises by him, with warranty against incumbrances to the intervenor, and praying that the notes and mortgages be decreed to be delivered up and canceled, or, if the Court held the mortgage to be still in effect, that the stock delivered by Z. to P. should be first sold, and the proceeds applied on the mortgage. Z. answered the original complaint, setting up the same facts as the intervenor, but suffered default to the complaint in intervention. The Court found that such a contract had been made, and that Z. had made and delivered to the plaintiff his notes, and had delivered to P. certain shares of stock of the kind but not of the quantity required by the contract, and that the stock had not been accepted by the plaintiff in satisfaction of the contract, and decreed that the stock should first be sold and the proceeds applied on the mortgage, and that the mortgaged premises should be sold for the balance only. *Held*, that the allegations of the complaint were insufficient to sustain the judgment; and *held, further*, that (without re-reference to the sufficiency of the complaint) the plaintiff had no lien upon the stock, the same not having been accepted by him, and that, therefore, this was not a case for a marshaling of securities in favor of the intervenor.

Appeal from a judgment for the plaintiff, and from an order denying a new trial, in the Fourteenth District Court, County of Nevada. Reardon, J.

*Johnson & Cross, Irvine & Le Breton*, and *Garber & Thornton*, for Appellant.

The judgment must be warranted by the pleadings. Upon the plaintiff's pleadings, the only relief he could have was a foreclosure of the mortgage. The allegations of a cross-bill cannot be invoked to supply facts not averred in the complaint. (*Cross* v. *De Valle*, 1 Wall. 74; *Doyle* v. *Franklin*, 40 Cal. 106; *Mercier* v. *Lewis*, 39 id. 535; *Collins* v. *Bartlett*, 44 id. 372; Story Eq. Pl. § 878.) Upon the findings the result is the same. If the agreement set up in the cross-bill was never consummated, if essential conditions precedent were not performed, or if the agreement was rescinded, then the mortgage contract sued upon was unaffected, and it alone could be enforced. The agreement must stand or fall as an entirety, and cannot be affirmed and enforced in part, and ignored and rescinded in part. (*Miner* v. *Bradley*, 22 Pick. 457; *Voorhees* v. *Earl*, 2 Hill, 288; *Junkins* v. *Simpson*, 14 Me. 364; *Coolidge* v. *Brigham*, 1 Met. 550; *Jennings* v. *Gage*, 13 Ill. 610; *Perley* v. *Balch*, 23 Pick. 286; *Norton* v. *Young*, 3 Greenl. 30; *Cushman* v. *Marshall*, 21 Me. 122; *Sumner* v. *Parker*, 36 N. H. 449; *Bohall* v. *Diller*, 41 Cal. 532; *Purdy* v. *Bullard*, 41 id. 444; *Walf* v. *Dietzsch*, 75 Ill. 205.)

*Geo. S. Hupp*, and *A. B. Dibble*, for Plaintiff Respondent.

The appellant ignores the intervention; yet the intervention was served upon him, and his default entered. The facts alleged in the complaint of intervention entitled the intervenor to the relief granted.

*Niles Searles*, and *A. C. Niles*, for Intervenor Respondent.

When the intervenor became a party to the suit, it became an actor; and the Court, having jurisdiction of all parties and the entire subject-matter, could properly grant it any relief consist-

ent with its statement of facts, and within the purview of a Court of Equity. The relief granted to intervenor, by a sale of the stock deposited by Zellerbach, was not granted to plaintiff or for his benefit, but was so decreed because the admitted facts showed that Zellerbach had bound himself to satisfy the mortgage, had in part performed his agreement, and had become insolvent. The intervenor is in a position to invoke the recognized principle of equity, that a prior incumbrancer, holding a lien upon several parcels of property, may be required by a subsequent grantee to resort first to the parcels not covered by the subsequent conveyance. It does not lie in the mouth of the common grantor or mortgagor to object to this equitable marshaling of securities. (1 Story Eq. Jur. § 633, *et seq.*; 1 Hilliard on Mort. 221–242.)

*C. W. Cross, Garber, Thornton & Bishop*, and *Wm. Irvine*, for Appellant (in reply).

It seems to us self-evident that unless Sigourney acquired a lien on this stock, it could not be subjected to sale in this action. Whether the sale is ordered at the instance of Sigourney or the intervenor is immaterial. The latter can only claim derivatively through Sigourney, and by way of substitution to his lien.

Ross, J.:

July 2nd, 1859, the defendant, the Eureka Lake Company, a corporation, executed to the plaintiff its promissory note for the sum of ten thousand dollars, payable July 2nd, 1860, with interest thereon from date until paid, at the rate of two and one-half per cent. per month; and to secure its payment, at the same time executed to plaintiff a mortgage upon certain property of the corporation, described in the mortgage as follows:

"All and singular those certain water ditches, flumes, and aqueducts, and the water rights, privileges, easements, and franchises of the Eureka Lake Company, situate, lying, and being in the County of Nevada, State of California, owned and possessed, constructed and constructing by the Eureka Lake Company aforesaid, including therein the waters of Cañon Creek and its tributaries, the French Lakes, ravines, gulches,

and creeks on the line of said ditch, extending from Cañon Creek to Bloomfield, (formerly Humbug City) and for supplying Eureka, Mount Zion, Relief Hill, Bloomfield, and adjacent towns, with water for mining and other purposes, together with all and singular the ditches, flumes, canals, reservoirs, water rights, ways and rights of way, tenements, hereditaments, and appurtenances in any way appertaining thereto, with the rents, issues, and profits thereof."

July 1st, 1864, the plaintiff commenced this action to foreclose the mortgage, the complaint being in the usual form of such actions.

One Zellerbach, among others, was made a party defendant. All of the defendants except Zellerbach suffered default. Service of process was made on him October 26th, 1877, more than thirteen years after the filing of the complaint.

Intermediate the execution of the mortgage of July 2nd, 1859, and the commencement of this action, the Eureka Lake Company consolidated its water rights, ditches, etc., with like properties of the Miners' Ditch, another corporation, and organized a new one under the name of the Eureka Lake Water Company. This new corporation borrowed of the plaintiff, about the 9th of November, 1861, the sum of twelve thousand dollars, and of one Marcellus the sum of twenty-eight thousand dollars ; and executed to the plaintiff and Marcellus its two several-promissory notes therefor, to secure the payment of which it also executed to plaintiff and Marcellus a mortgage on its property. The Eureka Lake Water Company also became largely indebted to the defendant Zellerbach, and other persons, and for the purpose of paying and discharging such debts, it duly assigned and transferred to Zellerbach, subject to the liens of the plaintiff, (Zellerbach having become the owner of the twenty-eight thousand dollar note) all of its water rights, ditches, and property.

In this condition of affairs, Zellerbach, who, in addition to the property above mentioned, was the owner and possessor of certain other water rights and ditches, became desirous of organizing a corporation in the State of New York, to which he might sell all of the said property. To accomplish his purpose it became necessary to free the property of all liens. With that end in view, he, (Zel-

lerbach) on the 23rd day of August, 1865, entered into and ex-
ecuted with the plaintiff, Sigourney, a contract in writing, by
which the respective parties covenanted with each other as fol
lows : Sigourney agreed that he would forthwith execute to Zel-
lerbach assignments of the note and mortgage made to him by
the Eureka Lake Company on the 2nd of July, 1859, and of
the twelve thousand dollar note made to him by the Eureka
Lake Water Company on the 9th of November, 1861, together
with his (Sigourney's) interest in the mortgage given by the
Eureka Lake Water Company to secure the payment of the
note last mentioned and the twenty-eight thousand dollar note
given to Marcellus ; and further, that he (Sigourney) would,
immediately upon executing the assignments, place the same, to-
gether with the said notes and mortgages, in the hands of John
Parrott of San Francisco, to be by him held in escrow, and deliv-
ered to Zellerbach upon the performance of the following con-
ditions on the part of Zellerbach, which the latter agreed to
perform : that is to say, Zellerbach agreed that immediately upon
the execution of the aforesaid assignments by Sigourney, and
the deposit thereof, together with the said notes and mortgages,
in the hands of Parrott, as already mentioned, he (Zellerbach)
would execute to Sigourney his promissory note for the sum of
forty thousand dollars, payable in gold coin nine months after its
date, with interest thereon at the rate of one-half of one per cent.
per month until the maturity thereof; and if not paid at matur-
ity, the said note to bear interest at the rate of one and one-
quarter per cent. per month until paid; and also that he (Zel-
lerbach) would at the same time execute to Sigourney his other
promissory note for the sum of ten thousand dollars, payable in
gold coin nine months after its date, with interest thereon
at the rate of one and one-quarter per cent. per month ; and
further, that he (Zellerbach) would pay or cause to be paid the
interest on said forty thousand dollar note monthly, and on said
last mentioned ten thousand dollar note at the end of every
three months.    It was further mutually agreed between the
respective parties, that in the event Zellerbach should, at
any time before the maturity of the last mentioned ten thousand
dollar note, become desirous of paying the same, he might do so
upon giving Sigourney thirty days' previous notice in writing of

such desire. The agreement then recites that " whereas, it is the intention of said party of the second part (Zellerbach) to forthwith proceed to organize a corporation for the purpose of carrying on and conducting the works in Nevada and Sierra Counties, California, heretofore owned and conducted by the said Eureka Lake Water Company * * * and by the Middle Yuba Canal and Water Company, now ·this agreement further witnesseth, and it is hereby mutually agreed and declared by and between the said parties," in substance, that the assignments, notes, and mortgages deposited in escrow with Parrott should remain in his hands as security for the payment of the forty thousand dollar note, and the last mentioned ten thousand dollar note, until said notes should be paid or other security given as next mentioned; that is to say, if Zellerbach should deposit with Parrott unincumbered and unassessable stock of the corporation he contemplated organizing, " to the amount of one-sixteenth part or share of the whole capital stock, as collateral security for the payment of said forty thousand dollar note, and the further amount of one sixty-fourth part or share of said stock, likewise unincumbered and unassessable, as collateral security for the payment of said ten thousand dollar note, then and in such case it shall be lawful and it is hereby made the duty of said Parrott to receive such stocks as such collateral security, and immediately thereupon to deliver " to Zellerbach the assignments, notes, and mortgages so deposited with him in escrow; " provided always, and it is hereby made the duty of said Parrott, before receiving such stock as security, and delivering such papers so deposited with him as aforesaid, to be fully satisfied that the titles of all property formerly belonging to the Middle Yuba Canal and Water Company and the Eureka Lake Water Company are conveyed to, and the same fully and completely vested in, the new company so to be. formed as aforesaid, free and clear from incumbrances other than liens, mortgages, or incumbrances held or controlled by said company, or by parties in trust for it, or held in escrow for its benefit."

Provision is then made in the contract for the disposition of the stock in the event of the payment of the forty and ten thousand dollar notes, and also for its disposition in the event of their non-payment.

The provisions of the contract between Sigourney and Zellerbach have been thus fully stated, because necessary to a correct understanding of the case.

The Eureka Lake and Yuba Canal Company Consolidated was subsequently incorporated under the laws of the State of New York, and, after obtaining leave of the Court, filed in this action, on the 29th of April, 1878, its complaint in intervention, wherein it is alleged that in the year 1865 Zellerbach had succeeded to and was the owner of the property described in the plaintiff's mortgage, and being desirous of selling it, together with other and similar property in the vicinity thereof by him either owned or controlled, and the intervenor being desirous of purchasing all of the said property, provided the liens could be removed, he, Zellerbach, for the purpose of discharging the liens, entered into the aforesaid contract with Sigourney, and that in pursuance of its terms, Sigourney executed an assignment of the notes and mortgages, as provided for in said contract, and did deposit the same, together with the assignments thereof, in the hands of John Parrott; that upon the making of the said deposit, Zellerbach executed to Sigourney his two promissory notes for forty thousand dollars and ten thousand dollars respectively, as provided for in the aforesaid contract of August 23rd, 1865, which were accepted by Sigourney, and have been ever since held by him, and upon which Zellerbach has up to and including February 1st, 1877, paid the interest as provided in said contract of August 23rd, 1865; that in further compliance with the said last mentioned contract, Zellerbach deposited with Parrott one-sixteenth of all the capital stock of the Eureka Lake and Yuba Canal Company Consolidated, unincumbered and unassessable, as collateral security for the payment of the forty thousand dollar note, and one sixty-fourth of all of said capital stock, likewise unincumbered and unassessable, as collateral security for the payment of the ten thousand dollar note, as in the said contract provided; that Zellerbach, in brief, kept and performed all the agreements, covenants and conditions on his part provided to be kept and performed in and by the contract of August 23rd, 1865; that Parrott, before receiving the stock as security, became and was satisfied, and so reported to the intervenor and to the plaintiff, that the property in the

agreement mentioned was free and clear of incumbrances and liens, except such " as were held by the intervenor, or by parties in trust for it, or in escrow for its benefit." The complaint in intervention further charges that Zellerbach represented to the intervenor that the incumbrances in the agreement of August 23rd, 1865, provided for, were deposited for him, to be delivered up and canceled upon the conveyance to intervenor of the property of the Eureka Lake Company, the Eureka Lake Water Company, the Middle Yuba Canal Company, and certain other property, and upon the issuing and deposit with Parrott of the stock as aforesaid for Sigourney; that relying upon such statements, and believing them to be true, the intervenor was induced thereby to purchase, and did, on, to wit, December 20th, 1865, purchase from Zellerbach, and take from him, a deed conveying to it in fee simple, all and singular the property in the contract of August 23rd, 1865, mentioned, including all of the property embraced in the mortgage described in the complaint; that by said deed of conveyance Zellerbach warranted and bound himself to defend the title to the property conveyed as against all liens, incumbrances, and adverse claims, and covenanted to and with the intervenor that all of the said property was free and clear from liens and incumbrances of every kind; that the conveyance to the intervenor was duly recorded, of all of which Parrott and Sigourney had notice, and that thereupon the stock was issued and deposited with Parrott for plaintiff, as before stated; that Zellerbach has become insolvent, and is unable to respond to intervenor in damages if the mortgage referred to in the complaint is foreclosed, and the property therein described sold. The prayer of the complaint in intervention is, first, that the note and mortgage described in the complaint be decreed to be delivered up to the intervenor and canceled; second, that if the Court find that the said note and mortgage were not duly assigned to Zellerbach, and that he is in equity bound to satisfy the same, that it will adjudge the interest on the note to have been paid to January, 1877, and as against the intervenor decree the two thousand shares of the capital stock of the Eureka Lake and Yuba Canal Company Consolidated, deposited as collateral security with Parrott, to be first sold to satisfy the amount due plaintiff, if any; and third, for general relief.

Zellerbach admitted the averments of the complaint in intervention, by failing to respond to them. The plaintiff answered, denying, among other things, the performance on the part of Zellerbach of the covenants and conditions of the contract of August 23rd, 1865. There were also other pleadings in the case—not, however, material to be mentioned. At the trial evidence was given, to which no objection seems to have been made, upon which the Court below found that, at the time of the making of the agreement between the plaintiff and Zellerbach in August, 1865, an "accounting and settlement were had between them, and upon such accounting it was ascertained and agreed (after deducting all credits, cash then paid, the interest from 2nd of July, 1865, to 19th of August, 1865, the difference in value between gold coin and legal tender notes of the United States) that the twelve thousand dollar note given by the Eureka Lake Water Company was fully paid, and there remained a balance due to the plaintiff on the promissory note in suit, the sum of fifty thousand dollars gold coin. The difference between the value of gold coin and said legal tender notes, together with said interest, deducted as above stated, was about $15,500, which sum the said defendant Zellerbach then and there verbally agreed to pay to the plaintiff."

The Court also found, among other things, that about the month of February, 1866, Zellerbach deposited with Parrott one thousand two hundred and fifty shares, being one-sixteenth of the capital stock of the corporation provided for in the contract of August 23d, 1865, to wit, the Eureka Lake and Yuba Canal Company Consolidated, in partial compliance with the said agreement; and further, that he never deposited with Parrott any other or greater number of shares of said stock in performance of the said agreement, or on account thereof, but that he did place in the hands of the said Parrott, for the said plaintiff, about September, 1867, seven hundred and fifty other shares of said stock as collateral security for the payment of the said sum of $15,500; that "the said Parrott has never delivered to the plaintiff the said one thousand two hundred and fifty shares of stock, nor any part thereof; nor has he delivered to the said defendant the two notes and mortgages described in said agreement, and deposited with him in escrow, nor either of them, nor

the said assignments thereof, placed with him likewise in escrow, nor either of them, but he still has each and every of said papers in his possession, and the contingency upon which the assignment of the note and mortgage in suit, executed by plaintiff and deposited with Parrott, was to be delivered to the said defendant, and take effect as a transfer, has never happened. The said plaintiff never accepted the one thousand two hundred and fifty shares, nor the seven hundred and fifty shares, nor both together, as security, nor as a compliance with the agreement aforesaid."

The Court below gave judgment for the plaintiff for the sum of $63,077.71, being the amount by it found to be due on the note mentioned in the complaint, including costs, and further adjudged and decreed that the one thousand two hundred and fifty shares of the stock of the Eureka Lake and Yuba Company Consolidated, in the hands of Parrott, be delivered to the Sheriff of Nevada County, and by that officer sold, and the proceeds of such sale applied to the payment of the costs of this action and the amount of the plaintiff's judgment, and that the excess, if any, be paid to Zellerbach; and, further, that in the event the proceeds of the sale of the said one thousand two hundred and fifty shares be insufficient to pay the costs of this action and the amount of the plaintiff's judgment, then the whole of the property described in the mortgage mentioned in the complaint, or so much thereof as may be necessary, be sold by the Sheriff, and the proceeds applied to the payment of the residue of said judgment and costs.

We are unable to discover any ground upon which the decree can be sustained. It is a cardinal rule that the pleadings of the party to whom relief is awarded must be sufficient to warrant the relief. (Story Eq. Plead. § 878; *Mondran* v. *Goux*, 51 Cal. 151; *Mercier* v. *Lewis*, 39 id. 535; *Collins* v. *Bartlett*, 44 id. 372; *Johnson* v. *Moss*, 45 id. 517; *Christian College* v. *Hendly*, 49 id. 350; *Hayward* v. *National Bank*, 6 Otto, 615; *Bradley* v. *Aldrich*, 40 N. Y. 504.) In this case the plaintiff's complaint makes no reference whatever to the shares of stock of the Eureka Lake and Yuba Canal Company Consolidated. Nor was there any reason why it should. The plaintiff certainly had no lien upon the one thousand two hundred and fifty

shares of the stock as security for the payment of the note in suit. If he had any lien on the stock at all, it was as security for the payment of the *forty thousand dollar* note; but according to the findings of the Court below, he had no lien on it for any purpose, for reasons presently to be stated.

In the absence of a lien to secure the payment of the note sued on, it is obvious that the plaintiff was not entitled to a decree directing the sale of the stock and the application of the proceeds to its payment.

It is said, however, that the decree, in so far as it directs the sale of the stock, was not made for the benefit of the plaintiff, but that it was " so decreed because the admitted facts showed that Zellerbach had bound himself to satisfy the mortgage, had in part kept his agreement, and had become insolvent."

We cannot see how the fact that Zellerbach had bound himself with the intervenor to satisfy the plaintiff's mortgage, and had in part kept his agreement, and become insolvent, could operate to *create a lien* in favor of the plaintiff, or of the intervenor, on the one thousand two hundred and fifty shares of stock, to secure the payment of the note described in the complaint.

This is not the case where one party has a lien on, or interest in, two funds or two pieces of property for a debt, and another party has a lien on, or an interest in, one only of the funds or pieces of property, and seeks, in equity, to compel the former to resort to the other fund or piece of property, in the first instance, for satisfaction; but here, on the contrary, and as already observed, the plaintiff *never had any lien* on the stock to secure the debt sought to be recovered by his action. Under such circumstances, we know of no principle which would authorize a decree directing the sale of the stock for the payment of the debt, whether it be made for the benefit of the plaintiff, or the subsequent purchaser of the property which *was* mortgaged to secure its payment.

There is another reason for the same conclusion, even if it be conceded that resort can be had in support of the decree to the complaint in intervention. That pleading, as we have seen, alleges, among other things, full compliance on the part of Zellerbach with all the agreements, covenants, and conditions of his

contract with Sigourney, of date August 23d, 1865. If its averments are true, it would follow, of course, that Zellerbach was entitled to the surrender of the note and mortgage mentioned in the complaint, as also the notes and mortgage made to him and Marcellus by the Eureka Lake Water Company, for cancellation; and the plaintiff would not be entitled to any relief in this action. It would seem plain, therefore, that if the complaint in intervention be looked to in support of the decree, so far from supporting it, the allegations there found would show, if established, that the plaintiff was not entitled to recover anything.

The Court below, however, contrary to the allegations of the intervenor, found as a fact that none of the stock was ever accepted by plaintiff as security or as a compliance with the contract of August 23d, 1865; that it was deposited only in escrow, and that the contingency upon which the transfer was to take effect has never happened. According to these findings, no lien could have arisen in plaintiff's favor upon such deposit: first, because none of the stock was ever accepted by the plaintiff as security; and, secondly, because it was deposited in escrow, and the conditions upon which it was to be delivered never happened. The delivery, therefore, never became absolute, and the stock continued as unaffected by any lien as though it had remained in Zellerbach's pocket.

Judgment and order reversed, and cause remanded to the Court below for a new trial, as of date May 20th, 1880.

McKINSTRY, J., and McKEE, J., concurred.